**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

———————————————————— )
                                                       )
**FREEDOM WATCH, INC.,**                )
                                                       )
              *Plaintiff*,                         )
                                                       )
       v.                                           )       **Case No. 5:13-cv-420-OC-10PRL**
                                                       )
**DEPARTMENT OF THE NAVY,**         )
**DEPARTMENT OF THE ARMY,**         )
**DEPARTMENT OF THE AIR FORCE, and** )
**DEPARTMENT OF DEFENSE**            )
                                                       )
              *Defendants*.                      )
———————————————————— )


<u>**MEMORANDUM IN SUPPORT OF DEFENDANTS'**</u>
<u>**OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

        Plaintiff Freedom Watch, Inc.'s motion for summary judgment ("Pl. Mot.") is

inappropriate.  Plaintiff's theory of summary judgment is premised on a

misunderstanding of the applicable legal standard in FOIA cases, and upon disputed

material facts.  Moreover, plaintiff moves for summary judgment against the defendants

even as they are processing Freedom Watch's FOIA requests.  This action is premature

and should be rejected.

        Freedom Watch also seeks the award of litigation costs and attorneys' fees.  Such

relief is likewise inappropriate at this juncture, as Freedom Watch must first establish its

right to relief, then substantially prevail on its claims, and then show it is entitled to costs

and fees, before it can be awarded costs and fees.  None of those things has happened yet.

Alternatively, defendants respectfully request that the Court stay consideration of plaintiff's Motion until defendants have filed their cross-motion for summary judgment. Defendants will do this by April 17, 2014, once the remaining searches have been completed.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Freedom Watch's Request for Records

In letters allegedly sent to the four defendant agencies on August 1, 2013, Freedom Watch requested "all documents that referred or related" to the U.S. military servicemen who died in a helicopter crash in Afghanistan in August 2011 during a mission named "Extortion 17."  Pl. Mot. at 1, 2.  From the Department of the Army, the Department of the Navy, and the Department of the Air Force, Freedom Watch requested a fee waiver and expedited processing.  Affidavit of Larry Klayman, Attachment 1.

### II.     The Agencies' Responses

Contrary to plaintiff's assertions, the defendant agencies have taken appropriate steps in response to plaintiff's FOIA requests.  Their actions are set forth below:

#### A. Department of the Army

Defendant Department of the Army received Freedom Watch's FOIA request on August 1, 2013, via mail and facsimile.  Ex. 1. at ¶ 5.  On August 14, 2013, the Department of the Army FOIA office sent Mr. Klayman a letter informing him that the Department of the Army FOIA office had forwarded the request to six other Army agencies for direct responses to Mr. Klayman.  *Id*. and Ex. A.  These agencies were: 1) United States Special Operations Command Army; 2) United States Army Central

2

Headquarters; 3) United States Army Medical Command; 4) Office of the Administrative Assistant to the Secretary of the Army; 5) United States Army Intelligence and Security Command; and 6) United States Army Aviation Center of Excellence and Fort Rucker. *Id*. at ¶ 5. On August 15, 2013, the Department of the Army FOIA office also sent Mr. Klayman an email to the same effect. *Id*. at ¶ 6. The United States Army Aviation Center subsequently forwarded the request to a seventh Army agency, United States Central Command. *Id*. at ¶ 12.

### 1. United States Army Special Operations Command

The United States Army Special Operations Command referred the FOIA request to United States Army Central because none of the deceased service members belonged to the United States Army Special Operations Command and it was not responsible for the mission. *Id*. at ¶ 7.

### 2. United States Army Central

United States Army Central received the request from the U.S. Army Special Operations Command, but after conferring with the United States Central Command determined it would have no records responsive to Freedom Watch's request because it was not involved in that operation. *Id*. at ¶ 8.

### 3. United States Army Medical Command

The United States Army Medical Command (MEDCOM) referred the request to the Armed Forces Medical Examiner System (AFMES). *Id*. at ¶ 9. In a September 13, 2013 letter to Mr. Klayman, the AFMES denied his FOIA request and explained how to appeal its decision. *Id*.

3

4.        **Office of the Administrative Assistant to the Secretary of the Army**

The Office of the Administrative Assistant to the Secretary of the Army

(OAASA) informed Mr. Klayman in a letter dated August 27, 2013 that it had no records

responsive to his FOIA request.  *Id*. at ¶ 10.

5.        **United States Army Intelligence and Security Command**

The United States Army Intelligence and Security Command (INSCOM) sent Mr.

Klayman a letter dated November 20, 2013, indicating INSCOM received the request on

September 19, 2013 and could not comply with the twenty-day statutory deadline.  *Id*. at

¶ 11.  The letter also informed Mr. Klayman he could consider such delay an

administrative denial or he could await a substantive response.  *Id*.  The letter was

returned to sender.  *Id*.  On January 13, 2014, INSCOM sent another letter to Mr.

Klayman stating that all elements of INSCOM searched their records for records

responsive to his FOIA request, but that no responsive records were identified.  *Id*.

6.        **United States Army Center for Aviation Excellence and Fort Rucker**

Headquarters, United States Army Garrison, for the United States Army Aviation

Center for Excellence and Fort Rucker, wrote to Mr. Klayman on September 3, 2013, to

acknowledge receipt of his FOIA request on August 19, 2013.  *Id*. at ¶ 12.  This letter

also informed Mr. Klayman that the matter was referred to United States Central

Command for further review and a direct response.  *Id*.  This matter was referred because

after it had discovered some responsive records, Headquarters, United States Army

Garrison determined United States Central Command ("Central Command") was the

appropriate authority to determine which responsive records could be released.  *Id*.

### 7. United States Central Command

The U.S. Central Command reviewed the records from U.S. Army Garrison Headquarters and determined that they did not originate with Central Command, nor were they classified by them. Ex. 2 at ¶ 5. Since Central Command did not have the authority to release or declassify the records, they returned them for further processing. *Id*. Nonetheless, in an effort to assist plaintiff, on November 19, 2013, Central Command provided Mr. Klayman with a disc containing 1,437 pages of materials previously reviewed and cleared for release by Central Command regarding the crash. *Id*. at ¶ 6.

#### *Ongoing Search*

Presently, Headquarters , United States Army Garrison, for the United States Army Aviation Center for Excellence and Fort Rucker has the potentially responsive records identified above and is processing those records for release in mid-April of this year. Ex. 1 at ¶ 13.

### B. Department of the Navy

Defendant Department of the Navy received Freedom Watch's FOIA request on August 8, 2013 via facsimile. Ex. 3 at ¶ 5. On that same day, the Department of Navy FOIA office notified Mr. Klayman by email it had received his request and placed it in the queue for processing. *Id*. The Department of Navy FOIA office contacted the Naval Special Warfare Command FOIA office to coordinate a response to Mr. Klayman. *Id*. at ¶ 6. Naval Special Warfare Command commands the SEAL Teams. *Id*. On August 28, 2013, the Naval Special Warfare Command FOIA Officer notified Mr. Klayman by email that it had received his request from the Department of the Navy. *Id*. at ¶ 7.

During its search for documents, the Naval Special Warfare Command discovered that the Joint Special Operations Command (JSOC) might have documents responsive to Freedom Watch's request.  *Id*. at ¶ 9.  On October 28, 2013, the Department of Defense, at Navy's request, ordered the U.S. Special Operations Command (the parent command of the JSOC) to also search for records responsive to Mr. Klayman's request.  *Id*.

### *Ongoing Searches*

On December 20, 2013, Naval Special Warfare Command notified Mr. Klayman via email that it located no records responsive to his request and advised him of his right to appeal.  *Id*. at ¶ 10.  In the same letter, Naval Special Warfare Command notified Mr. Klayman his request had been forwarded to the U.S. Special Operations Command.  *Id*. The Naval Special Warfare Command subsequently discovered records that may be responsive to Mr. Klayman's request and are reviewing those records for release.  *Id*. at ¶ 11.  The U.S. Special Operations Command is also still reviewing their records for materials responsive to Mr. Klayman's request.  *Id*. at ¶ 12.  Both anticipate completing their searches and review by April 17, 2013.  *Id*.

### C.       Department of the Air Force

Defendant Department of the Air Force received Freedom Watch's FOIA request on September 23, 2013.  The Headquarters Air Force (HAF) FOIA office acknowledged receipt of the request in a letter to Mr. Klayman dated September 25, 2013.  Ex. 4 at ¶ 4. That letter also denied the request for expedited processing and informed Mr. Klayman of his right to appeal that denial.  *Id.*  He did not appeal.  *Id*.

The United States Central Command is the Combatant Command responsible for the geographic area in which the helicopter crash that is the subject of the request occurred. *Id*. at ¶ 4. The Air Force component of the U.S. Central Command is U.S. Air Force Central ("USAFCENT"). *Id*. The HAF FOIA office referred Freedom Watch's request to the USAFCENT FOIA office. *Id*. at ¶ 5. The USAFCENT FOIA office forwarded the request to the Office of the Command Surgeon ("USAFCENT/SG") and to the Directorate of Intelligence ("USAFCENT/A2") for searches of their records. Both offices searched their records and found no responsive records. *Id*. On October 10, 2013, the HAF FOIA office sent Mr. Klayman a "no records" response with information necessary for an appeal of their finding. *Id*.

**D.    Department of Defense**

Defendant Department of Defense has no record of a FOIA request from plaintiff for this information. Ex. 5 at ¶ 3. Freedom Watch does not include in its complaint or in Mr. Klayman's affidavit any letter or facsimile addressed directly to the Department of Defense. *See* Complaint and Klayman Affidavit Attachment 1. The address listed for the Department of Defense on the letters allegedly sent to the Department of the Army, the Department of the Navy, and the Department of the Air Force all contain the address "Department of Defense, 1400 Defense Pentagon, Washington, DC". *Id*. This is not the address for the Office of Freedom of Information within the Department of Defense, nor is it the address of any FOIA office within the Department of Defense. *Id*. at ¶ 4.

**ARGUMENT**

**I.      Freedom Watch's Motion Conflates the Standards for Standing and
          Summary Judgment**

Freedom Watch maintains defendants' responses were not timely and that

therefore it is entitled to summary judgment.  Pl. Mot. at 7.  This is legally incorrect.

Rather, when a plaintiff that has submitted a proper FOIA request does not receive a

response within the statutory time limits, he is entitled to sue in federal court, as Freedom

Watch has here.  *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 58 (D.C. Cir. 1987);

*Taylor v. Appleton*, 30 F.3d 1365, 1368 (11th Cir. 1994).  A lack of timely response does

not, however, in itself entitle a FOIA requester to prevail at summary judgment.  The

District of Columbia courts[1] have explained on numerous occasions that a "lack of

timeliness does not preclude summary judgment for an agency in a FOIA case."

*Hornbostel v. U.S. Dep't of Interior*, 305 F.Supp.2d 21, 28 (D.D.C. 2003) (citation

omitted).  On the contrary, it is well established that "[t]he only question for summary

judgment is whether the agency finally conducted a reasonable search, and whether its

withholdings are justified.  When exactly a reasonable search was conducted is

irrelevant."  *Hornbostel*, 305 F. Supp. 2d at 28 (citation omitted).  *See also Bory*, 933

F.Supp.2d. at 1359.  This is because "once the Court determines that the agency has,

however belatedly, released all nonexempt material, [it has] no further judicial function to

perform under FOIA.'"  *Muhammad v. U.S. Customs & Border Protection*, 559 F. Supp.

2d 5, 7 (D.D.C. 2008) (quoting *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982)).

---

[1] This court has acknowledged the experience of the D.C. courts regarding FOIA matters because of the
volume of FOIA litigation which they handle.  *Bory v. U.S. R.R. Retirement Bd.*, 933 F. Supp. 2d 1353, 1358
(M.D. Fla. 2013).

Plaintiff's Motion attempts to evade defendants' legitimate legal objections to Freedom Watch's complaint noted in defendants' answer by rushing the Court to a premature factual evaluation of the case.  Despite these maneuverings, and the shortcomings discussed above, the fact remains that plaintiff has improperly pled venue, has failed to exhaust his remedies against the defendants, and has issued improper FOIA requests.  Defendants will address these legal arguments in a dispositive motion on or before April 17, 2014.  In the meantime, Plaintiff's conflation of the standards for standing and summary judgment should be rejected by this Court.

## II.      Under the Proper Summary Judgment Standard, Freedom Watch's Motion is premature.

Under the correct summary judgment standard, the Court should deny Plaintiff's motion as premature.  To prevail on its motion in the FOIA context, Plaintiff must demonstrate that a defendant "improperly withheld agency records in response to Plaintiff's FOIA request."  *Bory*, 933 F. Supp. 2d. at 1360 (citing *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 152 (1980).).  Until the searches are completed and the documents are identified, there is no way for the plaintiff or this Court to evaluate whether the defendants withheld agency records, let alone whether they withheld those records improperly.  *See Miscavige v. Internal Revenue Serv.*, 2 F.3d 366, 369 (11th Cir. 1993) ("FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified,"); *see also Cappabianca v. Comm'r, U.S. Customs Serv.*, 847 F.Supp. 1558, 1562 (M.D. Fla. 1994).  It is premature to ask this Court to issue partial rulings on Plaintiff's motion while components of the defendants are still completing their searches based on Freedom Watch's voluminous requests.

Freedom Watch elected to sue all four defendants simultaneously; it cannot now expect the Court to split the defendants and address Freedom Watch's arguments piecemeal. Once all of defendants' searches are complete, they will submit any remaining responsive documents to the plaintiff and move for summary judgment with a *Vaughn* index by April 17, 2014.

Likewise, plaintiff's demand for a *Vaughn* index is premature and should be denied. It makes little sense to require the government to produce a *Vaughn* index before it has finished processing plaintiff's FOIA request. *See Edmond v. U.S. Attorney*, 959 F.Supp. 1, 5 (D.D.C. 1997) ("It is well settled Vaughn Indexes are generally unavailable until after the agency has decided the extent of disclosure."); *see also Miscaviage v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993) ("The plaintiffs early attempt in litigation to obtain a *Vaughn* Index . . . is inappropriate until the government had first had the chance to provide the court with the information necessary to decide the exemptions.").

**III.    Freedom Watch cannot establish that there are no disputes to the material facts that it relies upon in its Motion.**

To avoid summary judgment the non-moving party must allege facts sufficient to raise a genuine dispute of material fact. A factual dispute is "material" if it would affect the outcome of the suit and "genuine" if a reasonable trier of fact could return judgment for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). All evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The factual shortcomings in plaintiff's motion mean it must fail. The Court should deny plaintiff's motion because the undisputed facts do not entitle Freedom Watch

10

to judgment as a matter of law.  Instead, those facts only establish that if plaintiff submitted proper FOIA requests to the defendants, it is entitled to have its claim heard in federal court.  Nearly every other material fact asserted by plaintiff in its motion and supporting affidavit is genuinely disputed by defendants and therefore summary judgment is not warranted.

Plaintiff alleges that defendants have violated the FOIA, Pl. Mot. at 1, and this is the factual basis for the relief he seeks.  Plaintiff specifically alleges that defendants violated the FOIA in a litany of ways including: refusing to conduct searches (Pl. Mot. at 10), not providing acknowledgement letters or other responses to plaintiff (Klayman Aff. at ¶ 2), failing to claim any exemptions (Klayman Aff. at ¶ 5), producing inadequate records (Pl. Mot. at 8) and failing to produce a *Vaughn* index (Pl. Mot. at 8).  These assertions are all in error.  And plaintiff thus has not established the undisputed evidentiary basis necessary to prevail in summary judgment.

### A.       Defendants have searched for records

Freedom Watch asserts at different times "no new search of responsive documents had ever been performed" and that defendants "refused to perform a search for responsive documents." Pl. Mot. at 9, 10.  On the contrary, defendants affirm that searches, and sometimes multiple searches, took place.  The Army states that several separate components conducted searches for responsive documents, and that one is still processing potentially responsive records.  Ex. 1 at ¶¶ 5-14.  The Navy states that after already conducting several searches for responsive records, two components are still conducting searches.  Ex. 3 at ¶¶ 8-11.  The Air Force states it conducted searches of two

components for responsive records.  Ex. 4 at ¶¶ 5-6.  Finally, the Department of Defense

explained above it never received a FOIA request from plaintiff.  Ex. 5 at ¶ 3.  *See Willis*

*v. DOJ*, 581 F.Supp. 2d 57, 68 ("It is axiomatic that an agency has no obligation to

respond to a request that it did not receive.")  Freedom Watch's assertions of material fact

are erroneous and the defendants' substantiated disputation of those assertions precludes

summary judgment in Freedom Watch's favor.

   **B.**  **Defendants did timely acknowledge Freedom Watch's requests**

   Freedom Watch asserts it never received timely acknowledgment letters or other

responses from defendants.  Klayman Aff. at ¶ 2.  Defendants disagree.  The Army

received Freedom Watch's FOIA request on August 1, 2013, and acknowledged receipt

to Freedom Watch via letter and email on August 14 and August 15, 2013, respectively.

Ex. 1 at ¶¶ 5, 6.  The Navy received Freedom Watch's FOIA request on August 8, 2013,

and responded that same day with an acknowledgment email.  Ex. 3 at ¶ 5.  The Air

Force received Freedom Watch's FOIA request on September 23, 2013, and

acknowledged receipt of the request to Freedom Watch in a letter dated September 25,

2013.  Ex. 4 at ¶ 4.  Each of these responses to plaintiff occurred within the twenty-day

window cited in ¶ 2 of the Klayman affidavit.  As explained above, the Department of

Defense never received a FOIA request from Freedom Watch.  Again, defendants have

demonstrated that Freedom Watch's assertion of a material fact is erroneous, precluding

summary judgment in Freedom Watch's favor.

**C.      Defendants did produce records in a timely manner**

Freedom Watch also argues that defendants failed to produce any documents responsive to its FOIA request in a timely manner.  Pl. Mot. at 5.  Although, defendants may not have provided responsive documents to Freedom Watch by the statutory deadline, they did produce responses to Freedom Watch's FOIA requests before then.  A denial or a finding of no responsive records is a response, too.  Of the defendants who received Freedom Watch's FOIA request, the Air Force which received the request on September 23, 2013, responded with a no records response by October 10, 2013.  Ex. 4 at ¶ 5.  This is within the 20 working day statutory limit established by the FOIA.  5 U.S.C. § 552(a)(6)(A)(i).  Likewise, one of the Army components, the Office of the Administrative Assistant to the Secretary of the Army, also filed a no records response on August 27, 2013, within 20 working days of receiving Freedom Watch's request.  Ex. 1 at ¶ 10.  Various other components of the Army and the Navy provided responses to Freedom Watch throughout the fall of 2013.  *See supra*, pp. 2-6.  So Freedom Watch's assertion of a material fact is again erroneous and defendants' disputation of it precludes summary judgment in Freedom Watch's favor.  Moreover, as defendants have already explained, *see supra* pp. 8-9, this fact, even if true would not entitle Freedom Watch to summary judgment.  *See also Hornbostel*, 305 F. Supp. 2d. at 28; *Bory* 933 F. Supp. 2d at 1359.

**D.      Defendants did claim exemptions on the records that they released**

Freedom Watch is also mistaken in its assertion that "[d]efendants did not claim any exemptions to Plaintiff's FOIA requests."  Klayman Aff. at ¶ 5.  Exemptions are only

necessary when documents have been withheld.  Most of Plaintiff's requests resulted in a finding of no responsive records.  *See supra* pp. 2-7.  To the extent, that defendants have produced responsive records to date, they included a letter citing the categories of exempted documents they were withholding.  Plaintiff includes this letter attached to his filing as Exhibit 1.  *See* ¶ 2 of Bennett letter to Klayman, Exhibit 1.  Moreover, the records themselves, as released by Central Command, were marked with the proper exemptions.  *See* Ex. 2 at ¶ 6.  Therefore, Freedom Watch's assertion of a material fact is again erroneous and defendants disputation of that fact precludes summary judgment.

### E.        The Army's release of records to date has been adequate

Freedom Watch also alleges that one records release by an Army component was inadequate, but does not explain what specific information it requested that was not provided.  Pl. Mot. at 9.  Instead it argues, without citation to any authority, that it is entitled by right to all the documents it requested.  *Id*. at 8.  The Army component maintains that its release of records was responsive and adequate.  *See* Ex. 2 at  ¶¶ 5, 6.  Freedom Watch's assertion of a material fact without support is insufficient and defendants disputation of that fact precludes summary judgment.  This is yet another demonstration that plaintiff's motion is premature before defendants' searches are complete.  Records that the defendants may discover and release could render any shortcomings that plaintiff perceives in the results to date moot.

### F.        Defendants are not required to produce *Vaughn* indexes at this stage

Plaintiff's argument regarding the timeline for the production of a *Vaughn* index was addressed above.  *See supra* p. 10.  Defendants have demonstrated that the

production of Vaughn indexes at this stage of litigation is premature. *Id*. The production of a *Vaughn* index before defendants have completed their searches and determined the number of responsive documents is an impossible task and plaintiff's demand further illustrates that its motion is premature. Once again, defendants disputation of plaintiff's unsupported assertion precludes summary judgment.

In all, nearly every material fact that Freedom Watch relies on to bring this motion is incorrect or insufficient. As defendants have raised genuine disputes as to each of these facts, plaintiff's motion for summary judgment should be denied.

**IV.     Freedom Watch's request for fees and costs is also premature.**

Freedom Watch also seeks "attorney's fees and other litigation costs." *See* Pl. Mot. at 9. After citing case law where FOIA fees are available to FOIA complainants who have substantially prevailed, Freedom Watch asserts it "substantially prevails," because defendants have "no legal basis to counter Plaintiff's claims" and because they "obviously acted in bad faith." These assertions are made without any reference to the record and *before* the Court has even ruled on any argument or fact in Plaintiff's motion.

Should this Court determine that Freedom Watch has submitted a proper FOIA request, and should it also determine that Freedom Watch has "substantially prevailed" on its claim, 5 U.S.C. § 552(a)(4)(E), and should it then determine Freedom Watch is eligible for a fee award, the Court could one day award Freedom Watch litigation costs. *See Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 525; *Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Justice*, 820 F.Supp.2d 39, 43 (D.D.C. 2011). But that day is not today. *See Campbell v. U.S. Dep't of Justice*, 164 F. 3d 20, 37

n.18 (D.C. Cir. 1998); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 760 F.
Supp. 2d 4, 9 n.5 (D.D.C. 2011) ("[T]he plaintiff . . . moves the court for an award of
attorney's fees. . . .  [R]esolution of this issue is premature.").

Furthermore, the Local Rules require that, "before filing any motion in a civil
case . . . the moving party shall confer with counsel for the opposing party in a good faith
effort to resolve the issues raised by the motion . . . ."  Local Civil Rule 3.01(g).  A
motion for attorneys's fees is not one of the motions exempted from the conference
requirement of the rule.  *Id*.  While Freedom Watch's counsel sought consent on its
motion for summary judgment (not required) by email, Freedom Watch's counsel at no
time indicated that Freedom Watch would also be seeking costs and fees at this juncture.
The failure of Freedom Watch to comply with Local Rule 3.01(g) provides a further
reason for the Court to deny Freedom Watch's request for costs and fees.

## V.   In the alternative, Defendants respectfully request that the Court stay consideration of Plaintiff's Motion

Defendants have demonstrated plaintiff's Motion for Summary Judgment is
premature and that it lacks the necessary evidentiary support.  Either shortcoming
provides a sound basis for the dismissal of plaintiff's motion.  Alternatively, the
government respectfully requests that the Court stay consideration of plaintiff's motion
until defendants have completed the last of their responsive searches and have submitted
their own motion for Summary Judgment by April 17, 2014.  This will preserve valuable
Court resources because it would allow the Court to consider the parties' presentations of
the case in tandem.

Such action is well within the Court's discretion and would not materially harm the plaintiff.  District courts have "broad discretion in deciding how best to manage the cases before them."  *Chudasawa v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997).  As the Supreme Court has explained, there is "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  Here, all of defendants' searches must be complete before the Court can consider the arguments in plaintiff's motion.  It would make little sense for the Court to rule on the merits of the plaintiff's claims before defendants can provide the Court with a complete account of their treatment of plaintiff's requests.  If the Court is unwilling to dismiss plaintiff's motion, it makes the most sense to consider it at the same time that the Court entertains the defendants' own motion for summary judgment.

## CONCLUSION

Defendants respectfully request this Court dismiss plaintiff's Motion for Summary Judgment.  In the alternative, defendants respectfully request that the Court stay consideration of plaintiff's Motion until after defendants have filed their own motion for summary judgment by April 17, 2014.

Dated: January 31, 2014

 

                             Respectfully Submitted,

                             STUART F. DELERY
                             Assistant Attorney General

                             ELIZABETH J. SHAPIRO
                             Deputy Director

                             */s/ Paul A. Dean*
                             PAUL A. DEAN
                             Senior Counsel (N.Y. Bar)
                             United States Department of Justice
                             Civil Division, Federal Programs Branch
                             20 Massachusetts Avenue, N.W.
                             Washington, D.C.  20001
                             Tel: 202-514-1280
                             Fax: 202-616-8470
                             Paul.dean@usdoj.gov
                             *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 31, 2014, I electronically filed the foregoing
document with the Clerk of the Court by using the CM/ECF system, which will send a
notice of electronic filing to the following CM/ECF participant(s):

Larry Klayman, Esq.
Freedom Watch
2775 NW 49th Avenue, Suite 205-345
Ocala, FL  34482

*/s/ Paul A. Dean*
PAUL A. DEAN
Senior Counsel (N.Y. Bar)
United States Department of Justice